IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARK HAMILTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-CV-02103-E |
| | § | |
| THE CITY OF WILMER TEXAS and RONA STRINGFELLOW, INDIVIDUALLY, | § § § | |
| | § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants City of Wilmer, Texas and Rona Stringfellow's motion to dismiss, which seeks to dismiss all of Plaintiff Mark Hamilton's claims. (ECF No. 7). Hamilton has responded, (ECF No. 16), and Defendants have replied, (ECF No. 17). For the reasons enumerated hereunder, the Court GRANTS Defendants' motion to dismiss. The Court further DENIES Hamilton's motion to amend his Complaint.

### I. BACKGROUND

**A. Hamilton's Work with Wilmer Fire Department and Lawrence Subpoena**

The City of Wilmer (Wilmer) "is a municipality within, and a subdivision of, the State of Texas." (ECF No. 1 at 2). Hamilton "was formerly employed as the Chief of the Fire Department of the []Wilmer," where he was employed "for over 17 years." (ECF No. 1 at 2). Stringfellow served as "City Administrator of [Wilmer]." (ECF No. 1 at 2). Craig Lawrence was another Wilmer Fire Department employee, who was a criminal defendant in a case originating from Dallas, Texas. (ECF No. 1 at 3-7). Hamilton's Complaint alleges Wilmer knew of Lawrence's "criminal misconduct . . . since the allegations were first raised against Lawrence in 2019." (ECF No. 1 at

3). Notwithstanding, "Hamilton and Lawrence had been acquaintances for many years." (ECF No. 8-9).

> Pertinent here, Hamilton alleges the following in his Complaint:
>
> On June 16, 2022, a subpoena was issued in the matter of the State of Texas v. Craig Lawrence, case number F1900317-W, in the 363rd Judicial District Court of Dallas County Texas. The subpoena had been issued by the Dallas County District Attorney's Office, acting through Patrick Capetillo, Assistant District Attorney.
> . . .
> On Monday, June 20, 2022, Lawrence informed Chief Hamilton that Lawrence had a court date coming up on Thursday July in order to assign him a new counselor. Lawrence did not then inform Chief Hamilton of the subpoena.
> . . . .
> On Tuesday June 21, 2022, Chief Hamilton was out of town picking up new equipment for the Wilmer Fire Department when a representative of the Dallas County District Attorney's Office attempted to serve Chief Hamilton the Subpoena at Wilmer City Hall. Because Chief Hamilton was out of town, the Dallas County District Attorney's representative could not serve Hamilton. However, this person's presence became known to City Administrator Stringfellow. Defendant Stringfellow called Chief Hamilton and informed him about the process server.
>
> Specifically, Chief Hamilton received notice of the subpoena via this telephone call from Stringfellow, which occurred via speakerphone. During the call, Chief Hamilton was able to hear that Defendant Stringfellow was present at all times with the Dallas County District Attorney's employee. On Chief Hamilton's end, the call was on speakerphone, and another Wilmer City Employee listened to the call while in Chief Hamilton's presence. However, Chief Hamilton was unaware of the details of the subpoena because they were not revealed to him on the telephone call. On the call, Hamilton agreed to be served by email.
>
> Thus, by June 21 Defendant Stringfellow was aware through her participation in this telephone call of three facts: (1) that the subpoena had been issued to Hamilton, (2) that Hamilton was due to be served with the Subpoena by email; and (3) that Hamilton did not know the details of the subpoena. Indeed, neither Stringfellow, nor Hamilton, were aware of the content of the subpoena, and Stringfellow made no instruction to Hamilton regarding the subpoena[.]
> . . . .
> [A]round 12 Noon on Wednesday, June 22, 2022, Chief Hamilton was served the Subpoena from the Dallas County District Attorney by email. The Subpoena ordered his attendance to appear as a "witness in behalf of the state" in the matter on the next day, Thursday June 23, 2022, at 9:00 am.
> . . . .
> Because the subpoena was issued to "Chief Mark Hamilton," as is the custom of fire chiefs in Texas, Hamilton appeared to testify in uniform.

> . . . .
> After being sworn under oath, Chief Hamilton was asked questions related to Lawrence. Hamilton testified under oath and told the truth as to all facts known to him.

(ECF No. 1 at 3-5). As attached to his Complaint, Hamilton summarized his June 23, 2022, testimony in Lawrence's criminal proceeding to Wilmer by correspondence as follows:

> (Called by the District Attorney) please state your name, employer and position. Mark Hamilton, City of Wilmer, Fire Chief. Does Mr Lawrence work for you? Yes, sir. Is it true you hired him *after* he was charged in this case? No, Mr Lawrence has worked for the City of Wilmer since 2013. Are you aware of the allegations Mr Lawrence has against him from 2019? Yes, I only know what he has told me because the District Attorney's Office and the Dallas Police Detectives refused to talk to me regarding his case because it was an ongoing investigation. Would you be surprised to find out Mr. Lawrence has visited adult sexually-oriented websites on his phone? Yes, I would. Knowing his charges, are you concerned with him going inside of people's homes? No, I'm not. He has never faced any disciplinary action at any place of employment that I am aware of.
>
> (Questioned by Mr Lawrence's attorney) How long have you known Mr. Lawrence? More than 20 years. How did you and Mr. Lawrence meet? We met while I was working for the Seagoville Fire Department where he started as a volunteer. Does this sound like the Mr Lawrence you have known for over 20 years? No, it does not.

(ECF No. 1-1 at 7-8). Hamilton pleads "it is correct to state that Hamilton testified on the clock, that is because in Texas, when a chief of a fire department is subpoenaed as "Chief" by the State of Texas' subpoena, then that means *he is understood to be testifying as the Chief of the Fire Department, and not as a civilian*." (ECF No. 1 at 11) (emphasis added).

### B. Hamilton's Termination

On June 24, 2022, Wilmer served a letter to Hamilton, which placed him on administrative leave. (ECF No. 1 at 8, ECF No. 1-1 at 4). As attached to the Complaint, this letter states:

> It has come to my attention that you allegedly withheld vital information regarding one of your staff members that puts the integrity of the Fire Department and public safety in question. It is also alleged that you represented yourself as an employee of the City of Wilmer in a legal proceeding for another employee without administrative permission or legal advice from the City Attorney.

(ECF No. 1-1 at 4). On August 9, 2022, Wilmer served a termination of employment letter to Hamilton. (ECF No. 1 at 9-10). As attached to the Complaint, this termination letter states:

> On June 24, 2022, you were placed on Administrative Leave with pay while the City investigated the claim that you withheld vital information regarding a member of your staff and whether said actions by you painted a negative light on the integrity of the Fire Department and public safety in general, as well as besmirching the City's name and bringing our reputation into disrepute. It was also alleged that you testified at a legal proceeding regarding this employee as a representative of the City without informing myself or receiving legal advice from the City Attorney. It was further alleged you did so for personal reasons but appeared in uniform and arrived and left the courthouse in a City vehicle. Further, you did not request, nor were you given, personal time off for action. These claims have been found to be true.
>
> On our City website, the Fire Department has a list of values it, and we as a City promote. One of those is: "We value the faith and trust of the community, and continually work to deserve that confidence through our attitude, conduct, and accomplishments." As a result of your actions, it is clear you do not have the level of judgment and trust required to lead the Fire Department and to be a member of the leadership team for the City of Wilmer. Therefore, your employment with the City of Wilmer is terminated immediately.

(ECF No. 1-1 at 9). Hamilton pleads that he appealed his termination to the Wilmer City Council, and that the City Council affirmed the termination. (ECF No. 1 at 11).

### C. Procedural History

On September 21, 2022, Hamilton initiated this litigation against Wilmer and Stringfellow. As relief, Hamilton pleads (i) violation of the First Amendment by Wilmer—incorporating 42 U.S.C. § 1983 and (ii) violation of the First Amendment by Stringfellow—also incorporating 42 U.S.C. § 1983. After their appearance in the case, Defendants moved to dismiss Hamilton's claims in accordance with Federal Rule of Civil Procedure 12(b)(6). (ECF No. 7). Having been fully briefed, the Court enters its determinations hereunder.

## II.    Legal Standards

Federal Rule of Civil Procedure 8(a) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. In reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to plaintiff. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). The Court will not accept as true "legal conclusions couched as factual allegations." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).[1]

---

[1] Hamilton's original response to Defendants' motion to dismiss contained his declaration as to the facts of the case. (ECF No. 13-1). The Court has not considered Hamilton's declaration for any purpose.

### III. ANALYSIS

To state a claim under § 1983, a Plaintiff must allege: (i) "some person has deprived him of a federal right" guaranteed by the United States Constitution or federal law; and (ii) "the person who deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). The existence of a constitutional violation is a "threshold" requirement in any § 1983 claim. *Peterson v. City of Fort Worth*, 588 F.3d 838, 844 (5th Cir. 2009). "[W]ithout an underlying *constitutional* violation, there can be no § 1983 liability[.]" *Becerra v. Asher*, 105 F.3d 1042, 1047 (5th Cir. 1997) (emphasis in original).

Defendants assert three bases for dismissal: (i) that Hamilton has failed to plead a plausible First Amendment retaliation claim; (ii) Hamilton cannot establish liability against Wilmer under *Monell*; and (iii) that Hamilton has failed to plead a cognizable First Amendment retaliation claim that overcomes Stringfellow's Qualified Immunity. (ECF No. 7 at 16-31). The Court next addresses each of these bases.

#### A. Whether Hamilton Pleaded a Plausible First Amendment Retaliation Claim

"A state may not retaliate against an employee for exercising [his] First Amendment right to free speech." *Bradshaw v. Pittsburg Indep. Sch. Dist.*, 207 F.3d 814, 815 (5th Cir. 2000). The Fifth Circuit has enumerated four elements required to establish a First Amendment retaliation claim:

> To establish a § 1983 claim for employment retaliation related to speech, a plaintiff-employee must show: **(1)** he suffered "an adverse employment action," *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004); **(2)** he spoke "as a citizen on a matter of public concern," *Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951, 1958, 164 L.Ed.2d 689 (2006); **(3)** his interest in the speech outweighs the government's interest in the efficient provision of public services, *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); and **(4)** the speech "precipitated the adverse employment action." *Eeds*, 392 F.3d at 142.

*Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007) (emphasis added in bold). Regarding the second element, the Supreme Court in *Garcetti v. Ceballos* held that:

> *when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes*, and the Constitution does not insulate their communications from employer discipline.

547 U.S. 410, 421 (2006) (emphasis added); *see, e.g.*, *Foerster v. Bleess*, No. 20-20583, 2022 WL 38996, at *4 (5th Cir. Jan. 4, 2022) ("*Garcetti* plainly forecloses First Amendment retaliatory claims when they stem from speech made 'pursuant to [a person's] official duties.'") (citing *Garcetti*, 547 U.S. at 421); *see generally, e.g.*, *Rogers v. Hall*, 46 F.4th 308, 313 (5th Cir. 2022) (discussing the same in a qualified immunity context). *Garcetti* established a "two-step inquiry into whether a public employee's speech is entitled to protection." *Lane v. Franks*, 573 U.S. 228, 237 (2014).

> **"The first requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech.** If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public."

*Lane*, 573 U.S. at 237 (block-quoting *Garcetti*, 547 U.S. at 418) (emphasis added in bold). The "[e]valuation of this prong of the [First Amendment] retaliation analysis is a question of law." *Corn v. Mississippi Dep't of Pub. Safety*, 954 F.3d 268, 277 (5th Cir. 2020) (citing *Graziosi v. City of Greenville*, 775 F.3d 731, 736 (5th Cir. 2015); *see, e.g.*, *Howell v. Town of Ball*, 827 F.3d 515, 522–23 (5th Cir. 2016) ("Under *Garcetti*, instead of asking only if the speech at issue was on a matter of public concern, a court must first decide whether the plaintiff was speaking as a citizen disassociated with his public duties, or whether the plaintiff was speaking in furtherance of the duties of his or her public employment.").

> In determining this first step of the *Garcetti* inquiry, the Fifth Circuit has explained:
>
>> In determining whether an employee was speaking as part of his duties or had stepped outside that role to speak as a citizen and thus receive First Amendment protection, we consider **"factors such as job descriptions, whether the employee communicated with coworkers or with supervisors, whether the speech resulted from special knowledge gained as an employee, and whether the speech was directed internally or externally."** *Rogers v. City of Yoakum*, 660 F. App'x 279, 283 (5th Cir. 2016) (citing *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008)).
>
> *Johnson v. Halstead*, 916 F.3d 410, 422 (5th Cir. 2019) (emphasis added in bold). The Fifth Circuit further explained:
>
>> To decide if a public employee is speaking as an employee or as a private citizen on a matter of public concern, we analyze whether the person spoke "pursuant to [his] official duties." *Hurst v. Lee Cnty.*, 764 F.3d 480, 484 (5th Cir. 2014). Our "inquiry is a practical one." *Gibson*, 773 F.3d at 667 (quoting *Garcetti*, 547 U.S. at 424). **In conducting this fact-intensive analysis, we have considered the relationship between the speech and the employee's job, whether the speech was made up the chain of command, and whether the speech resulted from special knowledge acquired as an employee.** *See id.* at 667–68, 670. **None of these factors are dispositive.**
>
> *Foerster*, 2022 WL 38996, at *2 (emphasis added in bold).

Defendants first assert that the First Amendment does not protect Hamilton in regard to his First Amendment retaliation claim because his speech occurred as a part of his official duties—not as a private citizen. In response, Hamilton appears to aver his speech occurred outside of his official duties.[2] Specifically, Hamilton relies on two cases: (i) *Lane*, 573 U.S. at 231 and (ii) *Rogers*, 46 F.4th at 309. However, neither *Lane* nor *Rogers* support Hamilton's assertion that his speech occurred outside of his official duties.

---

[2] To this point, Hamilton's briefing is mixed into his briefing that "[a] Witnesses [sic] Interest in Telling the Truth is Almost Always Greater than a Governmental Employer's Interest in Controlling the Testimony When the Speech is Not in the Employee's 'Ordinary Duties[.]'" (ECF No. 16 at 17-24). That is, Hamilton does not respond independently to the threshold issue of whether he spoke in his official duties or as a private citizen. (*See generally* ECF No. 16).

In *Lane* "[i]t was undisputed that Lane's ordinary job responsibilities did not include testifying in court proceedings." 573 U.S. at 238 n.4. Lane's application to this proceeding is inapposite, as facts in the Complaint—discussed hereunder—indicate Hamilton's job responsibilities include testifying in court proceedings. In *Rogers*, Rogers alleged he was discharged from his position as a state prison employee after he provided sworn testimony—about a work-related investigation Rogers conducted—in a court proceeding. *Rogers*, 46 F.4th at 309-11; *Rogers v. Mississippi Dep't of Corr.*, No. 4:18-CV-257-RP, 2021 WL 2301931, at *2 (N.D. Miss. June 4, 2021), *aff'd sub nom. Rogers*, 46 F.4th at 308. Both the Fifth Circuit and the district court acknowledged that Rogers's sworn testimony occurred within the scope of his "ordinary job duties." *Rogers*, 46 F.4th at 313; *Rogers*, 2021 WL 2301931, at *5 (discussing, *inter alia*, that no evidence that testifying in court generally or testifying in Bobo's criminal proceeding specifically was outside the scope of his ordinary job duties" and that "[t]here is no evidence Rogers was off duty when he testified."). Similar to *Rogers*, the pleadings show Hamilton's testimony occurred within the scope of his ordinary job duties.

At this motion to dismiss stage, the Court accepts the following well-pleaded facts as true: (i) Hamilton was the Chief of the Wilmer Fire Department; (ii) the Dallas County District Attorney's office subpoenaed "Chief Mark Hamilton" to testify in a matter wherein another Wilmer Fire Department employee, Lawrence, was a criminal defendant; (iii) the Dallas County District Attorney's Office attempted to serve Hamilton at Wilmer City Hall; (iv) Wilmer City Administrator Stringfellow communicated notice of the subpoena to Hamilton in a call with another Wilmer City employee and a Dallas County District Attorney employee on the call; and (v) Hamilton testified in Lawrence's criminal proceeding—while wearing his Fire Chief uniform, during work hours—as to (a) Hamilton's employment as Wilmer's Fire Chief, (b) Lawrence's

work with Wilmer, (c) Hamilton's knowledge of allegations involving Lawrence from 2019, and (d) Hamilton's knowledge that Lawrence had not faced disciplinary action at any place of employment. (ECF Nos. 1, 1-1). Indeed, Hamilton's pleading confirms that he "testif[ied] as the Chief of the Fire Department, and not as a civilian." (ECF No. 1 at 11).

Therefore, the Court reaches the same result as the district court in *Rogers*. 2021 WL 2301931, at *5. In light of the factors the Fifth Circuit enumerated in *Johnson* and *Foerster*—Hamilton's well-pleaded facts, taken as true, show (i) Hamilton testified in Lawrence's criminal proceeding as the Chief of the Wilmer Fire Department; (ii) the subpoena was noticed to "Chief" Hamilton, which involved joint communication with Wilmer employees and the subpoenaing entity; and (iii) Hamilton's testimony included special knowledge about Lawrence's disciplinary history, which Hamilton gained as an employee of the Wilmer Fire Department. Consequently, the Court must conclude that, as pleaded, Hamilton spoke at Lawrence's criminal proceeding as an employee of Wilmer in furtherance of his duties or as a part of his public employment. Therefore, Hamilton "has no First Amendment cause of action based on his . . . employer's reaction to the speech." *Garcetti*, 547 U.S. at 418, 422; *see Foerster*, 2022 WL 38996, at *4. The Court GRANTS Defendants' motion to dismiss as to Hamilton's First Amendment claims.[3]

### B. Whether Hamilton Pleaded *Monell* Liability Against Wilmer

Assuming arguendo that a cognizable First Amendment violation occurred, "[m]unicipal liability under 42 U.S.C. § 1983 requires proof of 1) a policymaker; 2) an official policy; 3) and a violation of constitutional rights whose 'moving force' is the policy or custom." *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (citing *Piotrowski v. City of Houston*, 237 F.3d

---

[3] The Court pretermits discussion of the remaining elements in a First Amendment retaliation claim as unnecessary.

567, 578 (5th Cir. 2001); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). As the Fifth Circuit has stated:

> The policymaker must have final policymaking authority. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988). Municipal liability cannot be sustained under a theory of *respondeat superior*. *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997); *Piotrowski*, 237 F.3d at 578. **"[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability."** *Piotrowski*, 237 F.3d at 578. Therefore to sustain liability under § 1983, the [Plaintiff] must point to more than the actions of a [municipal] employee, **[Plaintiff] must identify a policymaker with final policymaking authority and a policy that is the "moving force" behind the alleged constitutional violation.**

*Rivera*, 349 F.3d at 247 (emphasis added in bold). Regarding a policy, the Supreme Court has explained that a governmental entity—such as Wilmer—may not be held liable under § 1983 "unless action pursuant to official municipal policy of some nature *caused* a constitutional tort." *Monell*, 436 U.S. at 691 (emphasis added). In discussing *Monell* the Supreme Court has further explained:

> [A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a *direct causal link between the municipal action and the deprivation of federal rights.*[]

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. at 399, 404 (1997) (emphasis added). In the § 1983 context, the Fifth Circuit has described "[o]fficial policy" as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render

>the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.), *on reh'g*, 739 F.2d 993 (5th Cir. 1984). "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)).

Defendants argue Hamilton has not sufficiently alleged facts to show that Wilmer had a policy that was the "moving force" behind the alleged First Amendment violation. Regarding a policy, Hamilton pleads:

>In this case, the policymakers were the City Administrator and City Council, the new official policy that the City Administrator created after-the-fact and that the City Council affirmed was that when a City employee gets a subpoena that might result in truthful testimony that embarrass [sic] the City, then the employee must advise the City Attorney and City Administrator of the subpoena and/or ignore the subpoena, and the violation of this never-before-written or communicated policy was because the City did not like the content of Plaintiff's First Amendment Speech.

(ECF No. 1 at 15-16). Hamilton offers scant briefing on how the above constituted a policy under the § 1983 context, as defined hereabove. *See also Webb v. Town of Saint Joseph*, 925 F.3d 209, 215 (5th Cir. 2019) (discussing "municipal policy" in the *Monell* context). Demonstrably, Hamilton refers to no policy statement, ordinance, regulation, or decision that Wilmer officially adopted and promulgated.[4] Thus, Hamilton's Complaint does not satisfy the first definition for "official policy." Notwithstanding, Hamilton's pleading only asserts one single allegation of an unconstitutional action by Wilmer; Hamilton neither pleads nor briefs Wilmer's purported policy

---

[4] As worded, Hamilton's complaint suggests this policy was created "*after the fact*"—after Hamilton's speech in the Lawrence criminal proceeding occurred. (ECF No. 1 at 15) (emphasis added).

relating to his complained-of constitutional violation as persistent or widespread. *See Webster*, 735 F.2d at 841. Thus, Hamilton's Complaint does not satisfy the second definition for "official policy."

Hamilton refers the Court to a third "way[] of establishing a municipal policy for the purposes of *Monell* liability. . . . even a single decision may constitute municipal policy in 'rare circumstances' when the official or entity possessing 'final policymaking authority' for an action 'performs the specific act that forms the basis of the § 1983 claim.'" *Webb*, 925 F.3d at 215 (internal citation omitted). Hamilton asserts that the "single decision" of Wilmer's discharge of Hamilton constituted municipal policy as such a "rare circumstance." *See Webb*, 925 F.3d at 215 (internal citation omitted). However, Hamilton's pleading does not contain well-pleaded facts to substantiate this assertion. That is, Hamilton's entire allegation regarding policy is conclusory and unsupported with well-pleaded facts. (ECF No. 1 at 15-16). Thus, such a conclusory pleading of a policy or custom and its relationship to the underlying constitutional violation is not sufficient to satisfy this element for *Monell* liability in this motion to dismiss context. *See Spiller*, 130 F.3d at 167.

For these reasons, the Court must conclude Hamilton has not sufficiently alleged facts to show that Wilmer had a policy that was the "moving force" behind the alleged First Amendment violation. The Court concludes Hamilton has not satisfied that element of *Monell* liability. Consequently—assuming *arguendo* a constitutional violation occurred—the Court GRANTS Defendants' motion to dismiss Hamilton's First Amendment claim(s) against Wilmer.

### C. Whether Hamilton Pleaded a Cognizable First Amendment Claim Against Stringfellow that Overcomes Qualified Immunity

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*,

659 F.3d 359, 370 (5th Cir. 2011). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986), and courts will not deny immunity unless "existing precedent . . . placed the statutory or constitutional question beyond debate," *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). A plaintiff seeking to overcome qualified immunity must plead facts: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft*, 563 U.S. at 735 (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). "To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (internal citation omitted). The Fifth Circuit further explained:

> The unlawfulness of the defendant's actions must have been readily apparent from sufficiently similar situations, but it is not necessary that the defendant's exact act have been illegal. *Id.* at 236–37. An official's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight. *Graham v. Connor,* 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper. *Babb v. Dorman,* 33 F.3d 472, 477 (5th Cir.1994).

*Brown*, 623 F.3d at 253.[5] Additionally, "[i]f the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were 'objectively reasonable' in light of 'law which was clearly established at the time of the disputed action.'" *Brown*, 623 F.3d at 253 (quoting *Collins v. Ainsworth,* 382 F.3d 529, 537 (5th Cir.2004)).

---

[5] Regarding whether a right was "clearly established," "[t]he central concept is that of fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Anderson v. Valdez*, 845 F.3d 580, 600 (5th Cir. 2016) (internal quotation omitted).

As discussed above, the Court concludes that no violation of a constitutional right occurred.[6] Assuming *arguendo* a violation of a constitutional right occurred, Defendants assert Stringfellow is entitled to qualified immunity "because it was not 'clearly established' that the Plaintiff's speech constituted protected <u>citizen</u> speech at the time of his termination." (ECF No. 7 at 26) (emphasis in underline in original). In response, Hamilton—relying on *Rogers*—avers that his speech in testifying in the Lawrence criminal proceeding was as "a public employee [speaking] *outside the scope of his ordinary job duties*[.]" (ECF No. 16 at 28). The Court has rejected this assertion above—as pleaded, Hamilton's speech occurred pursuant to his official duties. Nevertheless, excluding *arguendo* the Court's conclusion, Hamilton's pleadings do not show that it was 'clearly established' that the Plaintiff's speech constituted protected citizen speech at the time of his termination.

Indeed, Stringfellow's acts are comparable to Puckett in *Benes v. Puckett*, 602 F. App'x 589, 594 (5th Cir. 2015). In *Puckett*, Puckett discharged Benes from his position with Dallas Water Utilities after Benes corresponded with members of the Dallas City Council regarding activities at Dallas Water Utilities. *Benes*, 602 F. App'x at 590-92. Benes asserted First Amendment retaliation claim(s) against Puckett, and the district court dismissed his claim(s). On appeal, the Fifth Circuit addressed the 'clearly established' prong of the qualified immunity inquiry for Puckett as follows:

> This discussion of the relevant *Garcetti* factors shows that the case law does not clearly establish whether Benes was speaking pursuant to his job duties or as a citizen. **This is precisely the situation in which qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."** See *al–Kidd,* 131 S.Ct. at 2085; *see also Gunaca v. Texas,* 65 F.3d 467, 474 (5th Cir.1995) (explaining that public officials facing First Amendment retaliation lawsuits are often entitled to qualified immunity "because 'reasonable government officials, knowing only that they must not infringe on [employee free speech rights], would not necessarily know just what conduct was prohibited' " (quoting *Noyola v. Tex. Dept. of Human Res.,* 846 F.2d

---

[6] Hamilton pleaded no statutory violation or corresponding claim. (*See* ECF No. 1).

1021, 1025 (5th Cir.1988))); *Noyola,* 846 F.2d at 1025 ("There will rarely be a basis for *a priori* judgment that the termination or discipline of a public employee violated 'clearly established' constitutional rights.").

*Benes*, 602 F. App'x at 594–95. As another court has summarized

"the Fifth Circuit determined that a government employee facing a First Amendment retaliation claim is entitled to qualified immunity when it is unclear whether an employee was speaking pursuant to his job duties or as a citizen."

*Sullivan v. City of Dallas, Texas*, No. 3:21-CV-915-S-BN, 2022 WL 3648625, at *5 (N.D. Tex. July 29, 2022), *report and recommendation adopted*, No. 3:21-CV-0915-S-BN, 2022 WL 3650743 (N.D. Tex. Aug. 24, 2022). The Court adopts the reasoning, above. Here, Hamilton has not pleaded facts that his right to testify at the Lawrence criminal proceeding under the protection of the First Amendment was "clearly established" at the time of Hamilton's discharge. *See Ashcroft*, 563 U.S. at 735.

For the reasons enumerated hereabove, the Court must conclude that, as pleaded, Hamilton has shown neither that Stringfellow violated a statutory or constitutional right nor that the right was 'clearly established' at the time of the challenged conduct. Accordingly, the Court must conclude Hamilton has not pleaded a cognizable First Amendment claim against Stringfellow that overcomes the qualified immunity protection. Thus, the Court GRANTS Defendants' motion to dismiss Hamilton's claims against Stringfellow.[7]

### IV. LEAVE TO AMEND

Hamilton's response requests for leave of Court "[e]specially as to [h]is [o]rdinary [d]uties and [f]acts to [s]how [p]unitive [d]amages." (ECF No. 16 at 28). "Rule 15(a) requires a trial court

---

[7] The Court pretermits discussion of the "objectively reasonable" inquiry because Hamilton does not brief this inquiry. (*See* ECF No. 16); *see generally Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) ("Courts should think carefully before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'") (internal quotation omitted).

to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citing *Jones v. Robinson Prop. Grp., LP,* 427 F.3d 987, 994 (5th Cir.2005)). "The district court is entrusted with the discretion to grant or deny a motion to amend[.]" *Marucci Sports*, 751 F.3d at 378. In deciding whether to grant or deny a motion to amend the Court "may consider a variety of factors including 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , and **futility of the amendment**.'" *Marucci Sports*, 751 F.3d at 378 (internal citation omitted) (emphasis added in bold); *see also, e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962) (enumerating the same). "Granting leave to amend is not required, however, if the plaintiff has already pleaded his 'best case.'" *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009).

Here, Hamilton avers he "can have more detail in this matter if necessary" and "stands ready to replead . . . as to additional facts . . . that he had never previously testified under oath in Court in his entire career as a firefighter and Fire Chief." (ECF No. 16 at 28-29). Hamilton attaches no proposed amended Complaint. *See* N.D. Tex. Loc. R. 15.1 ("When a party files by electronic means a motion for leave to file an amended pleading, *the party must attach the proposed amended pleading to the motion as an exhibit*.") (emphasis added); (*see generally* ECF No. 16). However—taking the Complaint's well-pleaded facts as true—such additional pleadings regarding Hamilton's purported lack of prior testimony under oath would, nevertheless, result in the same outcome of dismissal. (*See* ECF No. 1); *see generally Rogers*, 46 F.4th at 313; *Rogers*, 2021 WL 2301931, at *5. Hamilton gives no indication that he did not plead his best case in his complaint or a corresponding more definite statement. Otherwise, Hamilton does not state other potentially material facts he would have included in an amended complaint. *See Brewster*, 587 F.3d at 768

(collecting cases).[8] For these reasons, the Court DENIES Hamilton's requested leave to amend the Complaint.

V. CONCLUSION

For the reasons above, the Court GRANTS Defendants' motion to dismiss all of Hamilton's claims. The Court DENIES Hamilton's request for leave to amend the Complaint. The Court shall enter a separate final judgment as to the same. *See* Fed. R. Civ. P. 54; Fed R. Civ P. 58.

**SO ORDERED.**

1st day of August, 2023.

ADA BROWN
UNITED STATES DISTRICT JUDGE

---

[8] Indeed, Hamilton asks the Court to improperly consider—in light of the Court's adjudication of a Rule 12(b)(6) motion to dismiss—a "supplemental" declaration attached to a previous response to Defendants' motion to dismiss. (*See* ECF Nos. 13, 13-1); *see generally Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Hamilton amended his response to Defendants' motion to dismiss, after obtaining permission from the Court. (ECF No. 16). Hamilton's amended response contains no declaration. (*See* ECF No. 16).